JRS:JV
F. #2025R00232

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - X<br><br>UNITED STATES OF AMERICA<br><br>- against -<br><br>DALIP SINGH and<br>GURNIRMAL SINGH,<br><br>                Defendants.<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - - X | A F F I D A V I T   A N D<br>C O M P L A I N T   I N   S U P P O R T<br>O F   A N   A P P L I C A T I O N   F O R<br>A R R E S T   W A R R A N T S<br><br>(18 U.S.C. § 1349)<br><br>Case No. 25-MJ-219 |

EASTERN DISTRICT OF NEW YORK, SS:

      MARK BALSAM, being duly sworn, deposes and states that he is a Special Agent with the Social Security Administration, Office of Inspector General, duly appointed according to law and acting as such.

      In or about and between December 2017 and June 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DALIP SINGH and GURNIRMAL SINGH, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the City of New York, and to obtain money and property from the City of New York by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

      (Title 18, United States Code, Section 1349)

The source of your deponent's information and the grounds for his belief are as follows:

1. I have been a Special Agent with the Social Security Administration, Office of Inspector General since March 2019, and have been involved in the investigation of numerous cases involving mail and wire fraud, bank fraud and theft of government funds, as well as conspiracy to commit these offenses. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.

2. Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. In addition, where the contents of documents, or the actions, statements and conversations of others are reported herein, they are reported in sum and substance and in part, except where otherwise indicated.

## PROBABLE CAUSE

I.     Prevailing Wage Requirements

3. The New York City Department of Education (the "NYC DOE" or "DOE") based, in part, in Brooklyn, New York, was the department of the City of New York that manages the city's public school system. The New York City public school system was the largest public school system in the United States with over 900,000 students and 1,596 schools as of the 2023-2024 school year.

4. The NYC DOE outsourced construction, maintenance and repair of public works to private contractors, which submitted bids to the DOE and were awarded contracts funded, in whole or in part, by the City of New York.

5. New York State Labor Law Sections 220 et seq. required that contractors on public works projects and contractors providing building services pay workers on those projects prevailing wages. Accordingly, each contract to which the NYC DOE was a party for the construction, alteration and/or repair of a public works project was required to contain a provision that all laborers employed on the public works project or building services contract be paid prevailing wages. See N.Y. Labor Law §§ 220(3)(a); 231(1).

6. The prevailing wages for NYC DOE contracts were determined by the New York City Comptroller (the "Comptroller") and consisted of a base hourly wage along with a supplemental benefits rate. The base hourly wage and supplemental benefits rate were set by job trade categories (e.g., Mason Tender; Cement Mason; Bricklayer; Pointer, Waterproofer, Caulker Mechanic (Exterior Building Renovation)) based in part on prevailing wages paid on union contracts, as well as the geographical area where work was performed. See also N.Y. Labor Law § 230(6), (8) (defining "prevailing wage" as the wage determined by the Comptroller "to be prevailing for the various classes of building services employees in the locality").

7. New York State Labor Law further required contractors to certify that they had complied with the prevailing wage requirements prior to receiving payment under a NYC DOE public works project or building services contract. To comply with this requirement, contractors on NYC DOE projects were required by New York State Labor Law, as well as by the terms of their NYC DOE contracts, to submit "Certification of Payroll" forms on a regular basis to the NYC DOE that stated, under penalty of perjury, the employees who worked on a particular project, the dates and numbers of hours those employees worked, and how much the employees were paid in wages and benefits. Since at least 2017, contractors prepared the "Certification of Payroll" forms by electronically transmitting employee names, job trade

category, days and hours worked, and pay and benefit information to Company-1, an entity the identify of which is known to me, a prevailing wage compliance vendor located outside of New York State.

8. In order for the City of New York to pay contractors on NYC DOE public works project or building services contract, the contractors were required to submit the "Certification of Payroll" form and a "Request for Payment" to the NYC DOE. Since at least 2024, contractors submitted the completed the payroll certification and payment request to the NYC DOE's Labor Compliance Monitoring System ("LCMS").

9. The NYC DOE's approval and the City of New York's payment were based, in part, on the NYC DOE's receipt of completed "Certification of Payroll" forms for the relevant period showing that all workers on the NYC DOE contract had been paid the prevailing wage.

10. After the NYC DOE approved a "Request for Payment," the City of New York disbursed payment to the contractor in the form of a check or an electronic transfer of funds to the contractor's bank account.

II.     The Defendants and Relevant Entities

11. The defendant DALIP SINGH was a citizen of the United States and a resident of East Meadow, New York. DALIP SINGH was the president and registered owner of TEMCO CONSTRUCTION NY, INC. ("TEMCO").

12. The defendant GURNIRMAL SINGH was a citizen of the United States and a resident of Westbury, New York. GURNIRMAL SINGH was an unregistered, de facto co-owner of TEMCO.

13. TEMCO was a general contracting business, providing scaffolding and masonry services, incorporated in the State of New York. From approximately December 2017 to April 2025, TEMCO maintained an office in Jamaica, New York. In or about April 2025, TEMCO closed its Jamaica office and moved to an office in Hicksville, New York. For the reasons set forth herein, I understand the defendants DALIP SINGH and GURNIRMAL SINGH controlled TEMCO, directing the company's operations and shared its profits. Since December 2017, TEMCO has received over $13,500,000 from the City of New York for its work on NYC DOE contracts.

III.     The Scheme to Defraud the City of New York

14. As set forth in detail below, between approximately December 2017 and June 2025, TEMCO did not pay prevailing wages to all of its workers at New York City public school locations and other NYC DOE buildings ("DOE Worksites"). Instead, the defendants DALIP SINGH and GURNIRMAL SINGH employed undocumented aliens who were not authorized to work in the United States ("Undocumented Workers") to work at DOE Worksites and paid those Undocumented Workers at rates far below prevailing wages. In furtherance of the scheme, DALIP SINGH and GURNIRMAL SINGH submitted to the NYC DOE, and caused TEMCO employees to submit to the NYC DOE, fraudulent "Certification of Payroll" forms for work performed by TEMCO employees at NYC DOE Worksites. These payroll certifications falsely listed DALIP SINGH and GURNIRMAL SINGH's relatives who had not actually worked at the DOE Worksites, falsely omitted some Undocumented Workers who actually worked at the DOE Worksites, and falsely overstated the wages being paid to TEMCO's workers at the DOE Worksites. At DALIP SINGH's direction, TEMCO employees electronically

transmitted the payroll certifications from computers located at TEMCO's Jamaica, New York office to servers maintained by Company-1 located outside of New York State.

IV. The Government's Investigation

    A. The Anonymous Tipster

15. The Internal Revenue Service Criminal Investigation ("IRS CI") has received a number of calls from an anonymous tipster concerning TEMCO. The summaries of those calls set forth below provide the contents of those calls in sum and substance, and in part.

16. On February 10, 2025, an anonymous tipster called the IRS CI to report illegal activity by TEMCO. The caller told IRS CI that TEMCO was owned by the defendants DALIP SINGH and GURNIRMAL SINGH, and that GURNIRMAL SINGH managed TEMCO's construction workers. The caller stated that TEMCO was a general contractor that had a contract with New York City ("NYC"), as well as private contracts. The caller stated that TEMCO was required to pay "prevailing wages" to workers on NYC contracts, but that TEMCO was violating labor laws and their NYC contract.

17. The caller stated that TEMCO employed some Undocumented Workers on NYC DOE projects, and that TEMCO did not pay those workers prevailing wages, but only a fraction of the prevailing wages. The caller stated that TEMCO fraudulently submitted the names of family members as workers to the NYC DOE when the family members did not actually perform any work. The caller stated that the difference between the prevailing wages reported to the NYC DOE and the actual wages paid to the Undocumented Workers, was actually paid to the defendants DALIP SINGH and GURNIRMAL SINGH's family members. The caller stated that TEMCO also issued 1099 forms to workers for income that had not been paid to the workers.

18. On February 28, 2025, the anonymous tipster called IRS CI again. The caller explained that the defendant GURNIRMAL SINGH was a silent part-owner of TEMCO, but was not listed as an owner on paper. The caller stated that GURNIRMAL SINGH was in charge of TEMCO's day-to-day operations. The caller stated that TEMCO issued fake or inflated 1099 forms to workers in order to write the amounts off as expenses, leaving the workers to pay the taxes on fictitious wages.

    B.    NYC Comptroller's Office

19. As part of the government's ongoing criminal investigation, law enforcement agents interviewed a representative of the Comptroller's Office.

20. The Comptroller's Office representative confirmed that when a contractor is performing public work for NYC, they have to pay prevailing wages based on union wages for particular trades. The representative confirmed that TEMCO had performed public work for NYC from at least 2018 through 2022.

21. The Comptroller's Office also voluntarily provided two complaints by former TEMCO employees that claimed that they had worked for TEMCO performing masonry repair, scaffolding and pointing work at DOE Worksites in 2019 and 2020, and that they had been paid $150 per day, below the prevailing wage of $400 per day. The workers also claimed that TEMCO and the defendants had failed to provide any supplemental benefits.

    C.    Confidential Source-1

22. On March 10, 2025, IRS CI interviewed Confidential Source-1 ("CS-1"), an individual whose identity is known to me. CS-1 voluntarily spoke with law enforcement. Based on a review of government databases performed by law enforcement agents and CS-1's

statements, CS-1 is an Undocumented Worker. The summary of CS-1's statements provided below are in sum and substance, and in part.

23. CS-1 told law enforcement that he/she had worked for TEMCO for six years as a laborer. He/she worked seven days a week and was paid in both checks and cash.

24. CS-1 further stated that he/she was an undocumented alien, that TEMCO had employed 15 or 16 undocumented workers, and that TEMCO paid the undocumented workers in checks and cash.

25. CS-1 voluntarily provided IRS CI agents with WhatsApp messages and photos reflecting that he/she had worked for TEMCO at multiple DOE Worksites.

26. CS-1 stated that TEMCO employees that worked at DOE Worksites were not receiving all of their wages. CS-1 explained that NYC prevailing wages were posted at NYC DOE Worksites and NYC investigators sometimes came to interview workers. Nonetheless, CS-1 stated that TEMCO directed its employees that when asked, they should lie and report that they were being paid prevailing wages.

27. CS-1 confirmed that the defendants DALIP SINGH and GURNIRMAL SINGH are TEMCO's owners. CS-1 told law enforcement that TEMCO paid money that was supposed to go to the workers at the NYC DOE Worksites instead to DALIP SINGH and GURNIRMAL SINGH's relatives. CS-1 stated that although TEMCO paid DALIP SINGH and GURNIRMAL's relatives, the relatives did not actually work.

28. In 2025, CS-1 submitted a complaint to the New York City Department of Labor, stating that he/she had been employed by TEMCO from 2017 to 2024, working at multiple NYC DOE Worksites. CS-1 stated that TEMCO paid her/him $235 a day, even though he/she believed that he/she was supposed to receive $175/hour or $1,400 for an eight-hour day.

D.  Confidential Source-2

29. On March 10, 2025, IRS CI interviewed Confidential Source-2 ("CS-2"), an individual whose identity is known to me. CS-2 voluntarily spoke with law enforcement. CS-2 is a United States citizen. The summary of CS-2's statements provided below are in sum and substance, and in part.

30. CS-2 had worked for TEMCO for approximately the last 6-7 years.

31. CS-2 confirmed that the defendants DALIP SINGH and GURNIRMAL SINGH are TEMCO's owners.

32. CS-2 stated that the defendant GURNIRMAL SINGH is in charge of TEMCO's operations, including recruiting documented and undocumented workers, dealing with vendors, and paying workers' salaries by delivering checks and cash.

33. CS-2 told law enforcement that some of TEMCO's workers are undocumented aliens who do not have social security numbers, but do have Tax ID numbers.

34. CS-2 stated that TEMCO issued checks to TEMCO vendors that did not actually perform any work for TEMCO. Instead, the vendors cashed the checks for TEMCO and returned the cash to DALIP SINGH and GURNIRMAL SINGH to pay TEMCO's workers in cash.

35. CS-2 stated that TEMCO's work at DOE Worksites was subject to NYC's prevailing wages, but that TEMCO did not pay its workers prevailing wages.

36. CS-2 stated that TEMCO paid the defendants DALIP SINGH and GURNIRMAL SINGH's family members, but that the family members did not actually perform any work. CS-2 explained, as an example, that while a worker at a DOE Worksite should

receive $4,500 for their work, TEMCO would pay the worker $900 and pay DALIP SINGH and GURNIRMAL SINGH's family members the difference of $3,600.

37. CS-2 told law enforcement that TEMCO was not paying the Undocumented Workers their full salary according to prevailing wages because they are undocumented and do not have social security numbers.

38. CS-2 also told law enforcement that TEMCO was also not paying documented workers their full salary according to NYC prevailing wages because their checks were being used to pay other workers.

E. Confidential Source-3

39. On March 11, 2025 and again on April 9, 2025, IRS CI interviewed Confidential Source-3 ("CS-3"), an individual whose identity is known to me. CS-3 voluntarily spoke with law enforcement. CS-3 is a United States citizen. The summary of CS-3's statements provided below are in sum and substance, and in part.

40. CS-3 has worked in TEMCO's office since 2018 and was responsible, among other things, for payroll, printing checks and giving them to the defendants DALIP SINGH and GURNIRMAL SINGH for distribution.

41. CS-3 also oversaw the administrative portion of TEMCO's contract with the NYC DOE. As part of those responsibilities, CS-3 maintained billing on DOE work, tracking jobs, coordinating with project managers, applying for and receiving payments, and ensuring payment of prevailing wages. CS-3 would submit weekly payroll reports to the DOE, including sign-in sheets that listed the names of the workers and hours worked, in order for the DOE to pay TEMCO for work performed.

42. CS-3 stated that the NYC DOE did not have proper sign-sheets for DOE Worksites. Instead, CS-3 created sign-in sheets based on information provided by the defendants DALIP SINGH and GURNIRMAL SINGH. The sign-in sheets omitted workers who actually worked at DOE Worksites and included people that were not at the DOE Worksites. Likewise, the weekly payroll reports included DALIP SINGH and GURNIRMAL SINGH's relatives that did not actually work at the DOE Worksites.

43. CS-3 stated that the workers that were not reported to the DOE were either 1099 independent contractors with Tax ID numbers or Undocumented Workers, and were not paid prevailing wages. In order to receive the prevailing wage for work performed by the 1099 contractors or Undocumented Workers, the defendants DALIP SINGH and GURNIRMAL SINGH directed CS-3 to substitute their family members' information for the actual workers on the weekly payroll reports to the DOE.

44. CS-3 stated that he/she did not know which workers were actually at job sites, but that the defendants DALIP SINGH and GURNIRMAL SINGH's family members did not actually perform work for TEMCO.

45. CS-3 confirmed that the defendant DALIP SINGH is TEMCO's owner and manages TEMCO's entire operation, including signing paychecks.

46. CS-3 stated that the defendant GURNIRMAL SINGH is TEMCO's senior project manager. GURNIRMAL SINGH has a verbal agreement with DALIP SINGH that he is a partner in the business, but has no written ownership interest.

F.  **TEMCO Records Seized from Gurnirmal Singh's Phone**

47. On April 17, 2025, the defendant GURNIRMAL SINGH returned to the United States from India, landing at John F. Kennedy International Airport. United States

Customs and Border Protection detained GURNIRMAL SINGH's cellular phone for examination as part of a border search.

48. On April 25, 2025, the Honorable Lois Bloom, United States Magistrate Judge, issued a search warrant for the forensic search of the defendant GURNIRMAL SINGH's cellular phone. See In the Matter of the Search of an iPhone 14 Max, 25-MJ-1667 (E.D.N.Y.).

49. The defendant GURNIRMAL SINGH's cellular phone contained multiple photographs of checklists listing names and dates marked with a "P" or an "X" (hereinafter, the "attendance logs"). CS-1, CS-2 and CS-3 all told law enforcement agents that they were familiar with the attendance logs, and that the logs listed TEMCO employees and the dates that the employees had worked for TEMCO. The attendance logs listed over a dozen Undocumented Workers, including CS-1.

50. The defendant GURNIRMAL SINGH's cellular phone also contained multiple messages and photographs of spreadsheets used to calculate TEMCO's employee pay. A redacted excerpt from one photograph is shown below:

| August 1st to 31st 2022 Employees | RATE | Days | Salary | LCMS CK | 1099 | Cash | |
|---|---|---|---|---|---|---|---|
| 1 | $ 180.00 | 24 | $ 4,320.00 | | | $4,320.00 | |
| 2 | $ 215.00 | 25.5 | $ 5,482.50 | $ 5,455.38 | | $27.12 | |
| 3 | $ 285.00 | 24 | $ 6,840.00 | | | $6,840.00 | |
| 4 | $ 190.00 | 2 | $ 380.00 | | $ 380.00 | $0.00 | |
| 5 | $ 220.00 | 17.5 | $ 3,850.00 | | $ 3,850.00 | $0.00 | |
| 6 | $ 210.00 | 24 | $ 5,040.00 | $ 4,672.37 | | $367.63 | |
| 7 | $ 170.00 | 25 | $ 4,250.00 | | | $4,250.00 | |
| 8 | $ 195.00 | 25.5 | $ 4,972.50 | $ 4,201.97 | | $770.53 | |
| 9 | $ 225.00 | 24 | $ 5,400.00 | $ 5,406.36 | | $0.00 | adv$6.36 |
| 10 | $ 235.00 | 26 | $ 6,110.00 | $ 4,908.06 | | $1,201.94 | |
| 11 | $ 210.00 | 25 | $ 5,250.00 | $ 1,080.43 | | $4,169.57 | |
| 12 | $ 225.00 | 12.5 | $ 2,812.50 | | $ 2,812.50 | $0.00 | |
| 13 | $ 185.00 | 11 | $ 2,035.00 | | $ 2,035.00 | $0.00 | |
| 14 | $ 230.00 | 24 | $ 5,520.00 | $ 1,811.12 | | $3,708.88 | |
| 15 | $ 285.00 | 25.5 | $ 7,267.50 | | $ 7,267.50 | $0.00 | |
| 16 | $ 205.00 | 26.5 | $ 5,432.50 | | $ 5,432.50 | $0.00 | |
| 17 | $ 210.00 | 24 | $ 5,040.00 | $ 2,904.88 | | $2,135.12 | add $2880 |
| 18 | $ 270.00 | 25 | $ 6,750.00 | | | $6,750.00 | |
| 19 New Guy | $ 160.00 | 18 | $ 2,880.00 | | | $0.00 | |
| 20 New Guy | $ 160.00 | 9 | $ 1,440.00 | | | $1,440.00 | |
| | | | $ 91,072.50 | $ 30,440.57 | $ 21,777.50 | $35,980.79 | |

51. Based on the investigation to date, including voluntary interviews with multiple former TEMCO employees, there is probable cause to believe that the spreadsheet shown above evidences the defendants DALIP SINGH and GURNIRMAL SINGH's scheme and artifice to defraud the City of New York. DALIP SINGH and GURNIRMAL SINGH, together with others, calculated TEMCO's workers' actual total "Salary" by multiplying the employees' "RATE" by the number of "Days" worked, regardless of whether they worked at DOE contracts or on private contracts.

52. At the defendants DALIP SINGH and GURNIRMAL SINGH's direction, TEMCO then deducted any amount electronically transmitted by DALIP SINGH to the NYC DOE in payroll certifications and paid by check, the "LCMS CK."

53. For example, Employee-1, the employee listed in row 6 of the spreadsheet pictured above, whose identity is known to me, was an Undocumented Worker. The spreadsheet indicates that the defendant DALIP SINGH had submitted a payroll certification to the NYC DOE that Employee-1 had been paid $4,672.37 for work paid at prevailing wages at DOE Worksites (for example, at a prevailing wage of $45.22 per hour for a "Roofer Journeyman," this would be equivalent to $361.76 for approximately 13 eight-hour days[1]). According to the spreadsheet, the defendants then deducted the $4,672.37 from Employee-1's actual salary of $5,040, paying the balance of $367.63 in "Cash." Accordingly, the defendants paid Employee-1 an actual effective rate of $210 per day for 24 days, regardless of his/her work

---

[1] To be clear, the investigation has not yet determined in which trade or trades the defendant DALIP SINGH certified to the DOE that Employee-1 had worked during the period August 1 to 31, 2022. Based on records produced by the DOE pursuant to subpoena, DALIP SINGH certified that TEMCO employees, including Employee-1, were paid for work in different trades and at different prevailing wages during different pay periods. The example in paragraph 51 is provided solely for illustrative purposes.

at DOE Worksites and the required prevailing wage. Nonetheless, the DALIP SINGH falsely certified to the DOE that TEMCO had paid Employee-1 the prevailing wage for his/her work at DOE Worksites.

  G. <u>Dalip Singh Directed the Destruction of Records</u>

  54. On June 16, 2025, CS-2 voluntarily spoke to law enforcement agents again. The summary of CS-2's statements provided below are in sum and substance, and in part.

  55. CS-2 reported that the defendant DALIP SINGH had removed TEMCO's computers from the Hicksville office on or about the week of June 9, 2025. CS-2 told law enforcement that DALIP SINGH had expressed concerns in sum and substance that law enforcement was investigating TEMCO. CS-2 stated that DALIP SINGH later had TEMCO's computers brought back to the Hicksville office so that TEMCO employees could extract certain records for NYC DOE billing and audits. DALIP SINGH then directed Employee-2, an individual whose identity is known to me, to destroy the computers and dispose of them in a garbage container.

  H. <u>Potential Flight From Prosecution</u>

  56. The defendant DALIP SINGH is currently on supervised release in the Eastern District of New York. On May 20, 2025, DALIP SINGH requested permission from the court to travel to India for a period of approximately four weeks, leaving in July 2025. <u>United States v. Dalip Singh</u>, No. 19-CR-303 (BMC), ECF No. 94. The court granted that application the same day. <u>Id.</u> Order dated May 20, 2025.

57. On June 24, 2025, law enforcement databases reported that the defendant GURNIRMAL SINGH has reserved a ticket to fly from John F. Kennedy International Airport to India on June 27, 2025.

58. Based on the investigation to date, I believe there is probable cause to believe that the defendants DALIP SINGH and GURNIRMAL SINGH are seeking to destroy evidence and flee from prosecution.

59. I respectfully request that this Complaint, as well as the requested arrest warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor completely known to the targets and subjects of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets and subjects an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, interfere with witnesses, and flee from prosecution.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued so that the defendants DALIP SINGH and GURNIRMAL SINGH, may be dealt with according to law.

_____
MARK BALSAM
Special Agent
Social Security Administration
Office of Inspector General

Sworn to before me telephonically this
26th day of June, 2025

*Cheryl Pollak*
_____
THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK